IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. ROBERT TENNY, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | No. 13 C 1498 |
| MICHAEL LEMKE, Warden Stateville Correctional Center, | ) ) ) | Judge Rebecca R. Pallmeyer |
| Respondent, | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Robert Tenny is serving a life sentence in the Illinois Department of Corrections for his participation in a 1978 home invasion that resulted in an armed robbery and double murder. Tenny seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition, filed in February 2013, identifies eight alleged bases for habeas relief: (1) the prosecutor violated *Brady* by failing to disclose potentially impeaching evidence about one of the state's witnesses; (2) the prosecutor knowingly presented false testimony at trial; (3) the trial court improperly limited cross-examination regarding the circumstances of petitioner's custodial statement; (4) trial counsel was constitutionally ineffective; (5) petitioner's natural life sentence predicated on death penalty eligibility factors violated double jeopardy where a jury previously found petitioner ineligible for the death penalty; (6) the sentencing hearing following petitioner's retrial violated Illinois law; (7) petitioner's natural life sentence violates *Apprendi*; and (8) the prosecutor failed to prove aggravating factors necessary for imposition of the death penalty or natural life imprisonment. Respondent Michael Lemke, the Warden of Stateville Correctional Center ("SCC") where Petitioner is incarcerated, has moved to dismiss Tenny's petition as untimely under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") [17]. For

the following reasons, the motion to dismiss [17] is granted. Tenny's petition [1] is dismissed, and the court declines to grant a certificate of appealability.

## **FACTUAL AND PROCEDURAL BACKGROUND**

I.  **Trials and Direct Appeals**

In 1989, a jury convicted Petitioner of two counts of first degree murder for his involvement in a 1978 home invasion, and the Cook County Circuit Court sentenced him to natural life imprisonment.[1] (R. 23 Order, *People v. Tenny*, No. 1-11-2284 (Ill. App. Ct. 1st Dist. Oct. 9, 2012), Ex. A to Resp't's Mot. to Dismiss [17], hereinafter "Resp't's Mot.," at 1.) Tenny appealed and the state appellate court reversed his conviction and remanded for a new trial, finding that the trial court had denied Petitioner a fair trial based on the cumulative effect of (1) the prosecution's reference in its opening statement to comments Petitioner had made to police that were never introduced as evidence at trial; and (2) restrictions on Petitioner's attorney's cross-examination of an accomplice witness. *People v. Tenny*, 224 Ill. App.3d 53, 66, 586 N.E.2d 403, 412 (1st Dist. 1991).

Tenny was re-tried in 1996, again convicted of two counts of first degree murder, and Judge Themis Karnezis sentenced to natural life imprisonment. (R. 23 Order, Ex. A to Resp't's Mot. at 2.) Petitioner again appealed, and this time the state appellate court affirmed the judgment on December 18, 1998. (Direct Appeal PLA, *People v. Tenny*, No. 87078 (Ill.), Ex. B to Resp't's Mot.) Petitioner filed a PLA to the Illinois Supreme Court, which denied the petition on June 2, 1999. (Order Denying Direct Appeal PLA, *People v. Tenny*, No. 87078 (Ill. 1999), Ex. C to Resp't's Mot.) Tenny did not seek a writ of certiorari from the United States Supreme Court; the deadline for doing so was August 31, 1999. (Tenny Pet. for Writ of Habeas Corpus, hereinafter "Tenny Pet.," at 2.)

---

[1] The record does not identify the judge that presided over the 1989 trial.

2

## II.    State Post-Conviction Proceedings

On April 1, 1999, while Tenny's PLA to the Illinois Supreme Court was still pending, Petitioner filed a *pro se* petition for post-conviction relief.[2] (*See* Post-conviction Common Law Record, *People v. Tenny*, No. 92 CR 11093 (Cir. Ct. Cook Cnty.), Ex. D to Resp't's Mot., at 14.) This petition's claims overlap, in part, with those of the habeas petition here; for instance, both assert that Tenny's trial counsel provided constitutionally ineffective assistance and that the prosecutor knowingly introduced perjured testimony. (R. 23 Order, Ex. A to Resp't's Mot., ¶ 3.) Later that month, Gwyndolette Ward-Brown from the Cook County Public Defender's office was appointed to represent Petitioner in his post-conviction proceedings. (*Id.*) Apparently unsatisfied by that appointment, Petitioner filed a *pro se* "Supplemental Petition for Postconviction Relief" two years later. In this supplemental petition, filed on May 8, 2001, Tenny challenged the constitutionality of his sentence under *Apprendi* and asked the court for "appointment of counsel other than the public defender." (Post-conviction Common Law Record, Ex. D to Resp't's Mot., at 18–40 (citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000)).) The trial court denied Tenny's post-conviction petition on May 23, 2001 without explanation.[3] (*Id.* at 42.) Petitioner filed, *pro se*, a timely notice of appeal on June 8. (Pet.'s Resp. Mem. to Resp't's Mot. To Dismiss, hereinafter "Pet.'s Resp.," at 8.)

---

[2]    This petition is not in the record, nor was it in the record before the Illinois Appellate Court on appeal. Perhaps because of the petition's absence, the appellate court was apparently unsure whether Tenny first filed for post-conviction relief in March 1999 or on April 1, 2001. (*Compare* R. 23 Order, No. 1-01-2593 (Ill. App. Ct. 1st Dist. March 21, 2003), Ex. E to Resp't's Mot., at 2 ("Petitioner filed a *pro se* petition for postconviction relief on April 1, 2001"), *with* R. 23 Order, Ex. A to Resp't's Mot., ¶ 3 ("In March 1999, defendant filed his initial *pro se* petition for relief under the Post-Conviction Hearing Act . . . ."). Petitioner's Certified Statement of Conviction reveals that the initial petition was, in fact, filed on April 1, 1999. (Certified Statement of Conviction, Ex. D. to Resp't's Mot., at C14.)

[3]    The trial court's order reads, in its entirety, as follows: "The following disposition was rendered before the Honorable Judge James B. Linn on May 23, 2001. Pro se motion denied." Post-conviction Common Law Record, Ex. D to Resp't's Mot., at 42.)

Evidently unaware of the trial court's decision, Ward-Brown wrote to Petitioner on both August 27, 2001 and October 2, 2001 to inform him that the hearing on his post-conviction petition had been continued to September 25, 2001 and December 10, 2001, respectively. (Letter from Ward-Brown to Tenny of 8/27/01, Ex. 9 to Pet.'s Resp.; Letter from Brown to Tenny of 10/02/01, Ex. 7 to Pet.'s Resp.) Based on these representations and the ambiguity of the trial court's opinion, Petitioner incorrectly believed that the court had dismissed only his supplemental petition (i.e., the *Apprendi* challenge) and had not yet reached the issues presented in his original post-conviction petition. (Pet.'s Resp. at 11.) According to Tenny, it was not until August 2002[4] that he learned that the trial court had, in fact, dismissed both his post-conviction petition and the supplemental petition. (*Id.*) On September 18, 2002, Petitioner wrote Ward-Brown to inquire about the status of his petitions, noting (1) that the circuit court clerk had no record of the court dates mentioned in Ward-Brown's prior letters (i.e., September 25, 2001 and December 10, 2001), and (2) that Tenny now believed that both petitions had been denied. (Letter from Tenny to Ward-Brown of 09/18/02, Ex. 8 to Pet.'s Resp.) Ward-Brown replied on October 18, 2002, informing Tenny that (1) his *Apprendi* issue had been dismissed and was now on appeal; (2) the post-conviction trial court had erroneously failed to address other issues raised in his initial petition; and (3) she was taking steps to bring this error to the court's attention. (Letter from Ward-Brown to Tenny of 10/18/02, Ex. 31 to Pet.'s Resp.) The next step in Petitioner's case, Ward-Brown indicated, was to "motion [his] case up for a December date," at which point she would "inform [him] of the specific date." (*Id.*) Petitioner never heard back from Ward-Brown regarding the potential December 2002 court date. (Pet.'s

---

[4] Petitioner discovered the true status of his petitions when he attempted (unsuccessfully, it appears) to retain private counsel. (*See* Letter from Stromsta to Tenny of 8/9/02, Ex. 10 to Pet.'s Resp.)

Resp. at 9.) The next contact[5] between attorney and client was a July 11, 2003 letter from Tenny to Ward-Brown in which Petitioner asked his attorney to file an attached supplemental brief with the court. (Letter from Tenny to Ward-Brown of 7/11/03, Ex. 23 to Pet.'s Resp.) Counsel acknowledged receipt of this letter on August 1, 2003, and informed Petitioner that he had the option to file the supplemental brief on his own. (Letter from Ward-Brown to Tenny of 8/1/03, Ex. 13 to Pet.'s Resp.) Tenny claims that the next time he heard from his attorney was in July 2004 when she wrote a letter in response to a message from Petitioner.[6] In that letter, Ward-Brown informed Petitioner that there would be a status hearing for his case on September 9, 2004 (Letter from Ward-Brown to Tenny of 7/21/04, Ex. 32 to Pet.'s Resp.), but Petitioner claims that no such hearing was ever held. (Pet.'s Resp. at 9.)

Meanwhile, on March 21, 2003, the state appellate court affirmed the trial court's denial of the post-conviction petition, finding that *Apprendi* does not apply retroactively on collateral review. (R. 23 Order, *People v. Tenny*, No. 1-01-2593 (Ill. App. Ct. 1st Dist. 2003), Ex. E to Resp't's Mot. at 1–3.) The appellate court was silent as to any other arguments made by Tenny and it did not refer to Tenny's initial post-conviction petition other than to note that "[a] copy of that petition is not contained in the record." (*Id.* at 2.) On April 23, 2003, Petitioner filed a timely *pro se* PLA, which the Illinois Supreme Court later denied on October 7, 2003. (Post-conviction PLA, *People v. Tenny*, No. 96195 (Ill. Oct. 7, 2003), Ex. F to Resp't's Mot.)

---

[5] Petitioner states that he did not hear from Ward-Brown between October 2002 and July 2004 (Pet.'s Resp. at 9), but his own exhibits belie this assertion. (*See* Letter from Ward-Brown to Tenny of 8/1/03, Ex. 13 to Pet.'s Resp.)

[6] The record does not explain if this message was left via telephone or written communication.

The final correspondence between Ward-Brown and Tenny in the record occurred in 2005, nearly two years after Petitioner's post-conviction PLA was denied.[7] On October 14 of that year, Ward-Brown wrote to Tenny, indicating that she had "motioned [Petitioner's] case up" in the circuit court, only to reverse course and remove it from the docket "after further review of the appellate opinion" revealed that the "case has already been adjudicated . . . ." She advised Petitioner that his only option going forward was "to file another post-conviction petition with the issue that [his] previous petition was dismissed based on *Apprendi* only[.]" (Letter from Ward-Brown to Tenny of 10/14/05, Ex. 11 to Pet.'s Resp.) Petitioner seemingly took this advice, and filed a *pro se* "Motion to Put Post-Conviction Back On Call," on December 7, 2005. (*See* R. 23 Order, Ex. A to Resp't's Mot., at 2; R. 23 Order, *People v. Tenny*, No. 1-08-2533 (Ill. App. Ct. 1st Dist. May 31, 2011), Ex. G to Resp't's Mot., at 4.) On May 15, 2008, the trial court dismissed this motion, finding that the issues it raised had already been resolved in earlier proceedings. (*See* R. 23 Order, Ex. G to Resp't's Mot., at 4–5.) Specifically, the circuit court noted that although the appellate court, on direct appeal, had identified errors made by the state at the 1996 retrial, those issues were not substantial enough to grant a new trial. (*Id.* at 4.) Petitioner also filed a supplemental post-conviction petition, alleging ineffective assistance from his post-conviction counsel, Gwyndolette Ward-Brown.[8] (*Id.*) The circuit court held a hearing on that petition on August 18, 2008 and determined that "the new filings, as well as the old filings, much

---

[7] The record does not indicate what, if any, interaction Petitioner and Ward-Brown had in the period between her letters dated July 2004 and October 2005.

[8] Tenny also filed a complaint against Ward-Brown with the Illinois Attorney Registration and Disciplinary Commission ("ARDC") based on the same attorney conduct alleged in the supplemental petition. (Pet.'s Resp. at 12.) It is not clear from the record what came of the ARDC complaint, but that result is inconsequential here. As the Commission told Petitioner in a December 15, 2005 letter: "no action [the ARDC] could take would impact [Tenny's] legal situation in any way." (Letter from Welsh to Tenny of 12/15/05, Ex. 20 to Pet.'s Resp.)

of this, maybe all of it, is matters already resolved," and that there were no "infirmities in the conviction or sentence." (*Id.*) Based on this finding, the court dismissed Tenny's supplemental petition, and Petitioner appealed. The post-conviction appellate court issued its decision on May 31, 2011, finding that the circuit court lacked jurisdiction to consider Tenny's filings some four-and-a-half years after already dismissing the same claims in his initial post-conviction petition. (*Id.* at 6.) The appellate court further rejected Petitioner's contention that his initial 1999 post-conviction petition was never addressed by Illinois's courts:

> The record shows that [Petitioner] filed his 2001 supplemental petition before the trial court ruled on his initial 1999 post-conviction petition, and in doing so, evinced his intent to add the claims in his supplemental petition to his initial petition . . . Under these circumstances, there was but one post-conviction petition before the court, and . . . [t]he fact that the circuit court did not specifically address the allegations presented in the initial filing does not change the dismissal order.

(*Id.* at 7–8.)

In September 2009, while the above appeal was pending, Petitioner also filed a *pro se* motion for leave to file a successive post-conviction petition, challenging his life sentence as unconstitutional. (R. 23 Order, Ex. A to Resp't's Mot., ¶ 6.) The trial court denied the petition, and Tenny appealed, but later voluntarily dismissed that appeal. (*Id.*) Nearly two years later, in June 2011, Petitioner filed a second *pro se* motion for leave to file a successive post-conviction petition. The circuit court again denied this petition, and Petitioner again appealed. (*Id.*) In response to this appeal, appointed counsel filed a motion to withdraw based on her conclusion that there were no meritorious issues to be raised.[9] The state appellate court (1) granted Ward-Brown's motion, and (2) affirmed the circuit court's dismissal of Tenny's petition on October 9, 2012. (R. 23 Order, Ex. A to Resp't's Mot., ¶ 9.) The Illinois Supreme Court denied petitioner's

---

[9] The record is silent as to whether Ward-Brown's original appointment continued throughout the entirety of Petitioner's post-conviction proceedings or she was re-appointed at some point.

ensuing PLA on January 30, 2013. (Successive Post-conviction PLA, *People v. Tenny*, No. 115360 (Ill. Jan. 30, 2013), Ex. H to Resp't's Mot., at 38.)

Finally, on February 26, 2013, Petitioner filed this *pro se* petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, alleging various violations of his Sixth and Fourteenth Amendment rights. (Tenny Pet. at 6–26.) Respondent moved to dismiss the petition as time-barred on June 14, 2013. (Resp't's Mot. at 1.)

## DISCUSSION

Respondent contends that Tenny's habeas petition is barred by the one-year limitations period that generally applies under AEDPA. (Resp't's Mot. at 1, 6–7 (citing 28 U.S.C. § 2244(d)).) Petitioner responds that, although his petition was filed more than one year after the conclusion of the direct and collateral review of his conviction, the entirety of that delay should be excluded from the limitations period under the so-called "exceptions" to AEDPA's statute of limitations and, as such, is timely. (Pet's Resp. at 6.) Tenny further argues that his petition is timely based on a theory of equitable tolling. (*Id.* at 11.) Petitioner is mistaken on both counts. As explained below, the exceptions to AEDPA's statute of limitations are not applicable here, nor is equitable tolling; and, as Tenny filed this petition more than a year after the limitations period began to run, it is untimely and must be dismissed.

### I. Timeliness

Under AEDPA, a state prisoner ordinarily has one year to file a petition for habeas corpus in federal court, starting from the date on which the judgment became final by the conclusion of direct review (or the expiration of the time for seeking such review). 28 U.S.C. § 2244(d)(1). That one-year clock stops running, however, while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . ." *Id.* § 2244(d)(2). There are just three circumstances under which courts may

consider federal habeas petitions filed more than a year after the end of direct and collateral review: (1) where the state creates an unconstitutional impediment to the filing of a petition; (2) where the Supreme Court recognizes a new, retroactive constitutional right; and (3) where newly discovered evidence forms the factual predicate of a claim. *Id.* § 2244(d)(1)(A)–(C).

### A. Tolling for Direct and Collateral Review

Petitioner's conviction became final when the deadline to file a certiorari petition to the United States Supreme Court passed on August 31, 1999, ninety days after the Illinois Supreme Court denied his PLA on direct review. (Order Denying Direct Appeal PLA, *People v. Tenny*, No. 87078 (Ill. 1999), Ex. C to Resp't's Mot.) Because he filed a post-conviction petition on April 1, 1999, during the pendency of the direct review of his conviction, however, the limitations period was tolled. 28 U.S.C. § 2244(d)(2).

Respondent argues that statutory tolling concluded on October 7, 2003, when the Illinois Supreme Court denied petitioner's PLA on post-conviction review. (Resp't's Mot. at 8.) Based on this timeline, the one-year the limitations period under AEDPA expired on October 7, 2004. As Petitioner understands the record, however, his post-conviction claims were actually pending in state court until January 30, 2013, mere weeks before he filed this habeas petition. (Pet's Resp. at 8–9.) This version of events relies on two assumptions: (1) that neither the trial court in 2001 nor the appellate court in 2003 actually ruled on Petitioner's initial post-conviction petition, and instead they rejected only his supplemental petition based on *Apprendi*; and (2) that whenever a state court agrees to hear a post-conviction petition filed by a petitioner, that petitioner's post-conviction proceedings operate to toll the AEDPA deadline regardless of the prior history of the case. Neither of these assumptions holds water. First, although the circuit and appellate courts make no mention of any claim other than Petitioner's *Apprendi* argument (which comes from the supplemental petition), this fact alone does not mean that their decisions

9

did not result in the dismissal of Tenny's initial petition as well. In fact, despite the courts' silence on some of Tenny's claims, the record demonstrates that the circuit court's decision 2001 dismissed all of Petitioner's collateral claims. For instance, the supplemental petition, filed *pro se* on May 8, 2001, asks the court "to admit his 'Supplemental Brief and Argument' to his 'Petition for Post-Conviction Relief,'" thereby indicating an addition to the initial petition and not a separate or successive one. (*See* Post-conviction Common Law Record, Ex. D to Resp't's Mot., at 20.) As the appellate court put it, this "evince[s] his intent to add the claims in his supplemental petition to his initial petition." (R. 23 Order, Ex. G, Resp't's Mot. at 7.) Further, Tenny filed his supplemental petition in 2001, prior to the trial court ever having ruled on his initial 1999 post-conviction petition. For all these reasons, the appellate court correctly determined that, in 2001, there was "but one post-conviction petition before the court," and that petition was dismissed. (*Id.*)

Second, it is simply not the case, as Petitioner would have it, that a subsequent post-conviction petition is capable of resuscitating the AEDPA limitations period after it has already expired. Tenny mistakenly finds support for this position in the Supreme Court's decision in *Carey v. Saffold,* 536 U.S. 214 (2002). In reality, however, the *Saffold* court simply held that "pending," as used in § 2244(d)(2), "cover[s] the time between a lower state court's decision and the filing of a notice of appeal to a higher state court." *Id.* at 217. Contrary to Petitioner's understanding of the law, the Seventh Circuit has also made clear that "a state proceeding that does not begin until the federal year has expired is irrelevant." *De Jesus v. Acevedo*, 567 F.3d 941, 943 (7th Cir. 2009); *see also Teas v. Endicott,* 494 F.3d 580, 582–83 (7th Cir. 2007) (where limitations period under § 2244(d)(1)(A) expired before filing of state post-conviction petition, no collateral review was "pending" in state court for purposes of tolling); *Escamilla v. Jungwirth*, 426 F.3d 868, 870 (7th Cir. 2005) ("The state court's willingness to entertain a

belated collateral attack on the merits does not affect the timeliness of the federal proceeding.") This case law is consistent with common sense: a later-filed post-conviction petition should not be able to bring an otherwise untimely habeas petition back to life. If that were the case, AEDPA's one-year limitations period would have no teeth. That this outcome is illogical is made especially clear where, as here, the late-breaking filing is meritless (i.e., the Illinois Appellate Court determined that Tenny's 2011 petition was outside the circuit court's jurisdiction because the issues it raised had already been adjudicated over four years prior). It cannot be the case that a petitioner may evade AEDPA's statute of limitations by simply filing a frivolous state post-conviction petition.

### B. Other Forms of Statutory Tolling

Although Tenny's habeas petition is untimely based only on the conclusion of the direct and collateral review of his conviction in state court, this is not the end of the court's analysis. His petition may also be timely under one of the three other exceptions to AEDPA's usual one-year limitations period if (1) the state created an unconstitutional impediment to the filing of the petition, (2) the Supreme Court recognized a new, retroactive constitutional right, or (3) newly discovered evidence forms the factual predicate of Tenny's claim. *Id.* § 2244(d).

Petitioner does not allege either a new, retroactive constitutional right or newly discovered evidence. He does, however, argue that the trial court's "erroneous dismissal" of his post-conviction petition in 2001 (and the appellate court's decision to affirm that dismissal in 2003) violated the Post-Conviction Hearing Act, 725 ILCS 5/122-1 *et seq.*, and "in all likelihood prevented the applicant from filing his habeas corpus within the 1 year time limit." (Pet.'s Resp. at 9.) This argument is without merit and has no bearing on the AEDPA deadline. Petitioner's vague suggestion that the courts violated state law by itself does not support a finding that his federal constitutional rights were violated. Based on the record here, there is no indication that

the courts created an unconstitutional impediment that prevented Petitioner's timely filing of his habeas petition. Rather, as discussed above, only one petition was before the circuit court in 2001, and it was dismissed. While the resulting order could have been clearer in its intention to dismiss all of Petitioner's claims, this lack of clarity in no way rises to the level of an unconstitutional impediment to his ability to file a timely habeas petition. This applies with equal force to the appellate court's order which referred only to Petitioner's *Apprendi* arguments due to the fact that no other arguments were in the record before it.

For the foregoing reasons, state review of Petitioner's post-conviction petition concluded on October 7, 2003 when the Illinois Supreme Court denied petitioner's PLA. None of the other start dates for the AEDPA limitations period are applicable here. One year later, on October 7, 2004, the AEDPA limitations period expired. Thus, this habeas petition, filed on February 26, 2013, is untimely.

## II.     Equitable Tolling

Nonetheless, the court may still consider the merits of Tenny's petition if it deems it timely under the doctrine of equitable tolling. The Supreme Court has explained that a habeas petitioner may be "entitled to equitable tolling only if he shows: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010). The Seventh Circuit has described equitable tolling as "an extraordinary remedy" that is "rarely granted." *Obriecht v. Foster*, 727 F.3d 744, 749 (7th Cir. 2013) (internal quotation marks omitted). In fact, this circuit has recently observed that it has "yet to identify a petitioner whose circumstances warrant [equitable tolling]." *Broyles v. Roeckeman*, No. 12 C 7702, 2013 WL 1729428, *3 (N.D. Ill. Apr. 22, 2013) (quoting *Tucker v. Kingston*, 538 F.3d 732, 734 (7th Cir. 2008)). The burden falls on the Petitioner seeking equitable tolling to show that it is warranted. *Obriecht*, 727 F.3d at 749.

Petitioner argues that his case merits equitable tolling because he pursued his rights diligently but failed to file a timely petition due to the "extraordinary circumstance" of his post-conviction counsel's misconduct, specifically her confusion and alleged misrepresentations regarding the dismissal of Tenny's petitions.[10] (Pet.'s Resp. at 12–13.) "Under certain circumstances, attorney misconduct constitutes an extraordinary circumstance warranting equitable tolling, such as when the attorney 'violate[s] fundamental canons of professional responsibility' by failing to communicate with his client and failing to perform necessary research." *Obriecht*, 727 F.3d at 749 (quoting *Holland*, 130 S. Ct. at 2564–65.) However, a "garden variety claim of attorney negligence" or "excusable neglect" (e.g., "a simple miscalculation that leads a lawyer to miss a filing deadline") is insufficient. *Holland*, 130 S. Ct. at 2564. For instance, the Seventh Circuit recently found that a petitioner who failed to timely file a habeas petition due to counsel's misreading of AEDPA had not established an "extraordinary circumstance." *Obriecht*, 727 F.3d at 750. In *Obriecht*, the petitioner informed his counsel, before retaining her, of a looming deadline for filing a state post-conviction relief in order to preserve his ability to file a federal habeas petition under AEDPA. Counsel misinterpreted the tolling provisions of the Act, however, and erroneously advised Obriecht that an extension in a probation revocation hearing had also tolled the AEDPA clock. Based on this advice, Obriecht did not file any motions for state court relief before the deadline; and, as a result, the habeas petition he eventually filed in federal court was deemed untimely. *Id.* at 747–48.

Here, too, Petitioner blames his failure to timely file a habeas petition on his attorney's errors in navigating the state post-conviction appeals process, although there is no evidence in

---

[10] Petitioner also invokes *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), to support his equitable tolling argument. *Martinez*, however, dealt with the issue of ineffective assistance of counsel in the context of procedural default. It offers no support for Petitioner here.

13

the record that Tenny and Ward-Brown ever discussed filing a federal habeas petition, nor did they ever refer to the AEDPA deadline. Unfortunately for Tenny, however, such an error does not constitute an extraordinary circumstance under controlling Seventh Circuit precedent. Accordingly, Petitioner is not entitled to equitable tolling here.

In light of this conclusion, the court need not address the question of whether Petitioner "pursued his rights diligently," but notes that the record here suggests that he did not. Most notably, Tenny himself highlights the fact that he learned no later than August 2002 that both his post-conviction petition and his supplemental post-conviction petition had been dismissed by the circuit court in May 2001. (*See* Letter from Stromsta to Tenny of 8/9/02, Ex. 10 to Pet.'s Resp.; Letter from Tenny to Ward-Brown of 9/18/02, Ex. 8 to Pet's Resp.) Yet Tenny did not attempt to file another motion or petition in state court until July 2003—nearly a year after he knew he had nothing pending in state court, and almost two years after the conclusion of his initial post-conviction proceedings. Thus, even if the court were persuaded that the circumstances here demanded that the period between May 2001 and August 2002 be equitably tolled for the purposes of the AEDPA deadline, such a determination would not excuse the additional eleven-month delay in filing any further proceedings in state or federal court.

## II. Certificate of Appealability

The court also declines to issue a certificate of appealability. Such a certificate may issue only if the prisoner has at least one substantial constitutional question for appeal. 28 U.S.C. § 2253(c)(2). When, as here, a district court denies relief on procedural grounds, the petitioner seeking the certificate must show both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack* v. *McDaniel*, 529 U.S. 473, 484 (2000). The only question for appeal here would be

whether Tenny's habeas petition was untimely; and the court's ruling on this procedural issue is not one that reasonable jurists would find debatable, nor does it present any substantial constitutional question.

## **CONCLUSION**

For the foregoing reasons, Petitioner's habeas corpus petition [1] is denied and court declines to issue a certificate of appealability.

ENTER:

Dated: March 11, 2014

_____
REBECCA R. PALLMEYER
United States District Judge